UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM M. BRUNNER,

        Plaintiff,

   v.                                        Case No. 18-C-1051

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

---

**DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION**

---

Plaintiff William Brunner filed this action for judicial review of a decision by the Commissioner of Social Security denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act with an alleged onset date of November 4, 2009. Brunner, who is proceeding *pro se* in this action, filed a brief wherein he briefly outlined his conditions that he contends render him disabled but did not directly address or identify any error in the administrative law judge's (ALJ) decision. The Commissioner filed his response, but Brunner failed to reply. For the reasons that follow, the decision of the Commissioner will be affirmed.

**BACKGROUND**

Brunner filed an application for SSI on December 6, 2013. R. 13. Brunner listed legal blindness in left eye, bipolar, schizophrenic, depression, nerve damage to left side of body, mass on right lung, and epilepsy as the conditions that limited his ability to work. R. 192. After his application was denied initially and on reconsideration, Brunner requested a hearing before an ALJ. On May 31, 2017, ALJ B. Lloyd Blair conducted a video hearing where Brunner, who was represented by counsel, and a vocational expert (VE) testified. R. 33–59.

At the time of the hearing, Brunner was 39 years old, was 5'7", and weighed 225 pounds. R. 35–36. Brunner testified that the highest level of education he has completed was the eleventh grade. R. 36. Although he has a driver's license, he stated that he does not drive. *Id.* Brunner does not currently work and last worked in October of 2010. *Id.* He was incarcerated from November of 2015 to December of 2016. *Id.*

Brunner testified about the chronic pain and nerve damage that he suffers from as a result of being shot seven times in 2010. R. 37. Brunner stated the pain runs from his head to his toes on his left side and ranges from a 4 on a good day to an 8 on a bad day on a scale of 1 to 10, 10 being the worst. R. 44. According to Brunner, activities, such as standing and walking, aggravate his pain. R. 45. Brunner also testified that he suffers from chronic back pain that also ranges from a 4 to 8 and is aggravated by the same actions. *Id.* Brunner further stated that he has constant pain in his right knee on which he had surgery because of bone-on-bone contact and that he has arthritis in his hands, legs, and back. R. 45–46. He testified that he sees his primary care doctor, pain management doctor, and physical therapist to address his chronic pain and that they have prescribed him Gabapentin, Baclofen, and Oxycodone. He feels jittery and anxious when he takes the medication. R. 38.

Brunner stated that his physical impairments make it difficult for him to climb stairs, squat, and pick up items heavier than five pounds from a table, but that he is able to bend over and pick a dollar bill up off the floor. R. 41, 43, 47. Brunner further testified that he cannot stand or sit continuously for more than about 30 minutes and that he has difficulty sleeping as a result of the pain, getting only three to four hours a night. R. 42, 50.

Brunner also testified about his epilepsy. He indicated he has had epilepsy for a long time but it was not formally diagnosed until five years ago. Brunner stated that he has seizures at least twice a year that last 15 to 30 minutes in length. R. 37–38, 43. Brunner has been prescribed Depakote to treat his epilepsy. R. 39. Brunner also stated that he is legally blind in his left eye. R. 37.

As to his mental health issues, Brunner testified that he has schizophrenia, post-traumatic stress disorder (PTSD), depression, and bipolar disorder. *Id.* He has seen a psychiatrist once a month since his release from incarceration, and he saw a psychiatrist for two years prior to his incarceration. *Id.* Brunner has been prescribed Mirtazapine, Seroquel, and Abilify by his psychiatrist, and stated that the medications make him feel stable but like a zombie. R. 38. Brunner testified that these conditions result in him having hallucinations, hearing voices a few times a week, experiencing mood swings on a daily basis as well as anxiety that comes and goes. R. 48. According to his testimony, Brunner has difficulties getting along with others, gets nervous around groups of people, can follow instructions well but is not always able to finish tasks because he gives up easily, and gets distracted easily because stress impairs his ability to focus. R. 47–48. Brunner stated that he has never been hospitalized as the result of any of his mental conditions. R. 39.

Regarding daily activities, Brunner testified that his cousin acts as his caretaker, helps him get dressed and takes care of cleaning, laundry, groceries, cooking, and other household chores. R. 40–41, 49–50. Brunner stated that he occasionally visits with friends, relatives, and neighbors. R. 41.

In a thirteen-page decision dated July 17, 2017, the ALJ determined that Brunner is not disabled. R. 13–25. The ALJ's decision followed the five-step sequential process for determining

disability prescribed by the Social Security Administration (SSA). R. 14–15. At step one, the ALJ concluded that Brunner has not engaged in substantial gainful activity since his December 6, 2013 alleged onset date. R. 15. At step two, the ALJ concluded that Brunner has the following severe impairments: bipolar disorder, psychotic disorder, depressive disorder, status post gunshot wounds to the left lower extremity, sciatic neuropathy, lumbago, and epilepsy. *Id.* At step three, the ALJ concluded Brunner did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16. The ALJ considered listings 1.00 concerning musculoskeletal disorders, 11.00 concerning neurological disorders, and listings 12.03 and 12.04 concerning mental disorders. R. 16–17.

The ALJ next assessed Brunner's residual functional capacity (RFC) and found that he can perform light work as defined in 20 C.F.R. § 404.1567(b) subject to the following limitations:

> never use ladders, scaffolds, or ropes; occasionally use ramps or stairs, stoop, kneel, crouch, or crawl; avoid walking on uneven surfaces; never use torque, pneumatic, or power tools; avoid concentrated exposures to hazards including dangerous and unprotected machinery or heights; occasionally bend, twist, or turn at the waist; do no commercial driving; never use foot controls; no objects presented from the left; requires a cane to ambulate; do only simple, routine, unskilled low stress work.

R. 17. At step four, the ALJ concluded, based on the testimony of the VE, that Brunner would be able to perform the following occupations: mail sorter, assembler, packager, visual inspector, and product processing jobs. R. 24. Accordingly, the ALJ found that Brunner is not disabled. R. 25. The Appeals Council denied Brunner's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v.*

*Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusion drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Brunner's three-page brief is more akin to a letter. It does not directly challenge any of the findings or reasoning of the ALJ's decision. Rather, Brunner describes his impairments and the difficulties that he faces as a result of those impairments on a daily basis and asserts that he is in fact disabled. While *pro se* filings are held to a less exacting standard than those prepared by counsel, the filing must contain a cogent argument with reasons supporting it as well as citations to authority and relevant parts of the record. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Despite Brunner's failure to

make a concrete argument, the court has undertaken a review of the record and concludes that the ALJ's findings are supported by substantial evidence in the record.

The ALJ determined that Brunner has seven severe impairments but concluded they did not meet or equal the required listings. Even though the ALJ found that Brunner's right knee pain did not constitute a severe impairment based on the evidence in the record, the ALJ still considered its effects when determining Brunner's RFC. *See* R. 18–19.

The ALJ's RFC determination that Brunner is capable of performing light work with the limitations set forth in the RFC is supported by the record. Although the ALJ found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 21. The ALJ first noted that Brunner's "treatment history has been inconsistent, sporadic, and conservative at best when he is not incarcerated." *Id.*

The ALJ concluded that the findings of the consultative psychological examiner, Dr. Lehmann, and the psychiatrist who performed an initial evaluation of Brunner did not represent "an accurate and reliable picture of the claimant's true abilities" because they were based solely on one-time examinations, the examinations were not completed at a time when Brunner was "actively participating in any mental health care or taking psychotropic medications," and when Brunner was taking medications consistently as prescribed—as was the case when he was incarcerated—it appeared that "his pain was adequately managed, his mental symptoms were under good control and did not cause any serious objective deficits, and he had no witnessed seizure activity." R. 21–23. An ALJ may discount a physician's medical opinion if it is inconsistent with other evidence in the

6

record. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Here, Brunner's medical records from the period of his incarceration support the ALJ's determination.

The ALJ found Brunner's testimony regarding his activities of daily living and need for assistance to be "not fully consistent with the independent medical evidence" and contradicted by his own statements. R. 21–22. In particular, the ALJ discussed how Brunner's statements to Dr. Lehmann in June of 2014 that his cousin did all the cooking, cleaning, laundry, and grocery shopping were contradicted by statements in a May 2014 function report where he stated that "he had no problems with personal care" and was capable of functioning independently despite his impairments, as well as statements made at his November 2014 initial psychiatric examination where he made no mention of needing his cousin's assistance and stated that he was caring for his two children, ages 5 and 12. *Id.* Based on the contradictory statements and Brunner's treatment history as a whole, the ALJ found that his impairments were not so severe that they rendered him disabled from working or dependent on a care giver for basic daily activities. R. 22. "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *see also Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (finding symptom analysis not "patently wrong" because the ALJ had "many specific reasons supported by the evidence"). In this case, the ALJ set forth specific reasons for his credibility determination that are supported by the record.

In addition, there is no indication here that the ALJ's RFC determination failed to account for all of Brunner's impairments, even those that are not severe in isolation. In creating the RFC, the ALJ accounted for Brunner's combined impairments:

> On account of his history of gunshot wound with residual left lower extremity pain and weakness coupled with the effects, if any, of his obese body habitus, he should be permitted to use a cane to ambulate and he should not walk on uneven surfaces.

> For the same reasons, he should be restricted to work that involves no more than occasional postural activities. To further accommodate his left lower extremity pain, he should never use foot controls. As a result of his lumbago, he should only occasionally bend, twist, or turn at the waist. Due to his history of seizures that he testified occur only once or twice per year, he need only adhere to certain safety precautions such as no commercial driving, no use of power tools, no concentrated exposure to hazards, and no climbing of ladders, scaffolds, or ropes. Although there is no evidence with respect to the claimant's allegation of blindness in the left eye, the undersigned finds that it is reasonable that he should not perform work where objects are presented from the left. Finally, he should be limited to simple, routine, unskilled, low stress work on account of his mental impairments.

R. 22. Brunner does not point to any objective medical evidence in his brief that the ALJ ignored or that would warrant a more restrictive RFC.

Although Brunner disagrees with the ALJ's finding that he is not disabled, his contention does not invalidate the ALJ's decision which is supported by substantial evidence in the record. *See Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). After a thorough review of the record, the court concludes that the ALJ did not commit any legal errors and that substantial evidence supports his decision. Accordingly, the Commissioner's decision is affirmed.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

Dated this  31st  day of August, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court